UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Joel Smith and Heather Grazzini, or any successors as Trustees of the Minnesota Laborers Health and Welfare Fund, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Garrett Jedlicki d/b/a G.F. Jedlicki and G. F. Jedlicki, Inc.,<br><br>Defendants. | Case No. 23-CV-1273 (KMM/TNL)<br><br>**ORDER** |

This matter came before the Court on Plaintiffs Joel Smith and Heather Grazzini, or any successors as Trustees of the Minnesota Laborers Health and Welfare Fund, et al. ("Plaintiffs") motion for default judgment and injunction against Garrett Jedlicki d/b/a G.F. Jedlicki and G. F. Jedlicki, Inc. ("collectively Defendants"). [ECF No. 9]. For the reasons set forth below, the Court grants the motion for default judgment, issues an injunction against the Defendants, and awards damages for the amount addressed herein.

## BACKGROUND

The Plaintiffs, Joel Smith and Heather Grazzini, or their successors, are Trustees of the Minnesota Laborers Health and Welfare Fund, the Minnesota Laborers Pension Fund, the Minnesota Laborers Vacation Fund, the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota, and the Minnesota Laborers Employers Cooperation and Education Trust ("Funds") (collectively, the "Plaintiffs").

[Compl., ECF No. 1 ¶ 1]. The Funds are multi-employer jointly-trusteed fringe benefit plans created and maintained pursuant to § 302(c)(5) of the Labor Relations Management Act of 1974 ("LMRA"), as amended, 29 U.S.C § 186(c)(5). [*Id.* at ¶ 2]. The Funds are administered in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1001, et seq., and are exempt from federal income taxation pursuant to the Internal Revenue Code. [*Id.*]

Defendant Garrett Jedlicki ("Mr. Jedlicki") is an individual who performs business under the name G.F. Jedlicki and is an employer within the meaning of Section (3)(5) of ERISA, 29 U.S.C. § 1002(5). [*Id.* at ¶ 3]. G.F. Jedlicki, was previously a Minnesota corporation, dissolved by the Minnesota Secretary of State in January 2023. [*Id.* at ¶ 4]. Prior to that dissolution, since at least May 15, 2017, the Defendants were bound by the terms of a series of collective bargaining agreements negotiated between the Highway, Railroad and Heavy Construction Division of Associated General Contractors of Minnesota and the Laborers' District Council of Minnesota and North Dakota on behalf of its affiliated Unions (the "CBAs"). [*Id.* at ¶ 9; Danley Decl., ECF No. 11, Ex. A at ¶ 2]. After the corporate dissolution, Mr. Jedlicki continued to conduct business under the name G.F. Jedlicki. [*Id.* at ¶ 4]. As such, all of the named Defendants are bound to the CBAs through at least April 30, 2024. [Compl. at ¶ 10; Danley Decl. at ¶ 5; Ex. C, ECF No. 11-2].

The CBAs require the Defendants to contribute to the Funds every month in an amount set forth in the CBA for each hour worked by its employees covered by the CBAs, and to accurately report and calculate the contributions due and owing in any given month

to the Funds. [Danley Decl. at ¶ 6–7]. Failure to do so shall render the Defendants delinquent for the respective month. [*Id.* at ¶ 8].

The Funds' auditor requested that G.F. Jedlicki and Jedlicki produce its payroll and employment records, documents that require disclosure under the CBAs, for the period of January 1, 2020, through December 31, 2021 ("Audit Period"). [*Id.* at ¶ 9–10]. And the Defendants breached the terms of the CBA by failing to submit the requested payroll and audit records to the auditor. [*Id.* at ¶ 12]. As such, the Funds are unable to calculate the sums owed by the Defendants without the requested payroll and employment records. [*Id.* at ¶ 13].

The CBAs also state that if the Defendants become delinquent, Defendants are required to pay liquidated damages in the amount equal to ten percent of the payment otherwise due. [*Id.* at ¶ 14]. But such an amount in liquidated damages due and owing cannot be determined until all required payroll and employment records are submitted. [*Id.* at ¶ 15]. Furthermore, under the CBA, a delinquent status requires the Defendants to pay interest on all delinquent contributions at a rate prescribed by the Trustees of the Funds. [*Id.* at ¶ 16]. The Funds' Collection Policy provides for the collection of interest at a rate equal to the actuarial assumed rate of return for the Minnesota Laborers Pension Fund plus .5 percent. [*Id.* at ¶ 17]. And the current actuarial assumed rate of return for the Minnesota Laborers Pension Fund is 7.5 percent. [*Id.* at ¶ 18]. Accordingly, the Funds indicate they are entitled to interest on the unpaid contributions at a rate of 8 percent. [*Id.* at ¶ 18]. However, interest on the unpaid contributions due and owing for the Audit Period cannot

3

be determined until the required payroll and employment records are produced by the Defendants. [*Id.* at ¶ 18].

Finally, the Plaintiffs claim that the Defendants are liable to the Funds for all attorneys' fees, service fees, filing fees, court reporter fees and other legal costs and disbursements, as well as the auditing fees and costs incurred in conducting such audit. [*Id.* 20].

The Plaintiffs filed a complaint on May 8, 2023, alleging breach of contract and ERISA damages, and are seeking an Order adjudging an audit for the period of January 1, 2020 through December 31, 2021; enjoining the Defendants from further failure or refusal to produce such records; unpaid fringe benefit contributions discovered to be due pursuant to the audit of the period of January 1, 2020 through December 31, 2021 plus all additional amounts to which the Plaintiffs are entitled, including interest and liquidated damages; an award of costs, disbursements and attorney fees according to law; and for such other and future relief as the Court deems just, equitable or proper.

According to the affidavit of service filed by the Plaintiffs, G.F. Jedlicki, Inc., and Garrett Jedlicki were served with the Summons and Complaint on May 8, 2023. [ECF No. 4]. The Defendants then had 21 days to file an answer or otherwise respond to the Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i), (b). That deadline has passed without any response to the Complaint. The Plaintiffs subsequently applied for entry of default under Federal Rule of Civil Procedure 55(a), and the Clerk of Court entered default as to G.F. Jedlicki, Inc., and Garrett Jedlicki on June 15, 2023. [ECF No. 8]. Plaintiffs then filed the pending motion for default judgment on November 27, 2023.

## ANALYSIS

I.     **Default Judgment**

To obtain a default judgment, a party must follow a two-step process. First, the party seeking a default judgment must obtain an entry of default from the Clerk of Court. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). As the Plaintiffs have sought an entry of default, which the Clerk of Court entered against the Defendants on June 15, 2023, the first step of this process has been completed.

Second, after default has been entered, the party seeking affirmative relief "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "Unless the complaint seeks a sum certain . . . a plaintiff cannot obtain a judgment without first persuading a judge to enter that judgment." *AGCO Fin., LLC v. Littrell*, No. 16-CV-4105 (WMW/FLN), 2017 WL 7369877, at *2 (D. Minn. Dec. 15, 2017) (internal quotations omitted). Because there is a "judicial preference for adjudication on the merits," the law generally disfavors default judgments and such judgments "should be a rare judicial act." *Delve Health, LLC v. Graham*, No. 21-CV-2570 (KMM/TNL), 2022 WL 2609060, at *3 (D. Minn. July 8, 2022) (citing *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 661 (8th Cir. 2015)) (internal quotation marks omitted). However, in certain situations, a default judgment is required and "is not unfair" when the defendant who has been properly served with the summons and complaint does not respond or otherwise appear. *Trustees of the St. Paul Elec. Const. Indus. Fringe Benefit Funds v. Martens Elec. Co.*, 485 F. Supp. 2d 1063, 1065 (D. Minn.

5

...

2007) (noting that the defendant may "readily calculate [the] legal exposure" that the defendant risks if a default judgment is obtained and that, after the defendant is served with the complaint, it is obvious what would happen if the defendant does not appear). The district court has sound discretion in determining whether to enter a default judgment. *Belcourt*, 786 F.3d at 661.

On May 8, 2023, the Plaintiffs effected service of the Summons and Complaint on Garrett Jedlicki doing business as G.F. Jedlicki. [ECF No. 4]. The summons warned that "judgment by default may be entered against [Defendants] for the relief demanded in the complaint" if Defendants did not answer to the complaint within 21 days of being served. To date, approximately ten months have passed since the Summons and Complaint were served, and the Defendants have not responded or engaged in this litigation. In light of the failure of the Defendants to answer or otherwise defend themselves, default judgment is proper.

When a defendant is in default, the district court accepts as true all of the factual allegations in the complaint except those relating to the amount of damages. *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010). However, the district court must "consider whether the unchallenged facts constitute a legitimate cause of action" because a party in default does not admit conclusions of law. *Id.* (internal quotation marks omitted).

Plaintiffs' claims arise from the alleged breach of the CBAs negotiated between the Plaintiffs and the Funds. The elements of a breach-of-contract claim under Minnesota law are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to the right to demand performance by the defendant, and (3) breach of the contract by

defendant." *Merchants Bank Equip. Fin. v. Snowtracks Com. Winter Mgmt., LLC*, No. 16-CV-2694 (WMW/DTS), 2020 WL 1910587, at *2 (D. Minn. Apr. 20, 2020) (internal quotations omitted). The party claiming a breach must have sustained losses as a result of the breach in order to recover. *See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013).

The facts alleged in Plaintiffs' Complaint, when accepted as true, establish that the Defendants entered into agreements with the Funds that required contributions to be made to the Funds in an agreed upon amount, and were required to accurately report and calculate contributions due to the Funds. The Defendant company continued to operate after its dissolution and as such, the Defendants are bound to the terms of CBA through at least April 30, 2024. These uncontested facts demonstrate the Defendants' liability to the Plaintiffs and provide a basis for a valid breach of contract action.

**II.     Damages**

Upon default, all factual allegations in the complaint are deemed admitted except for those relating to the amount of damages. Fed. R. Civ. P. 8(b)(6); *see also Huntington Nat'l Bank v. DreamTeam Servs. Inc.*, No. 22-CV-1281 (WMW/DTS), 2023 WL 2465320, at *2 (D. Minn. Mar. 10, 2023). Since liability has been established, the sole remaining issue before the Court is to determine the amount of damages, which must be proved by a preponderance of the evidence. *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001). The district court may determine damages "by taking evidence when necessary or by fixing the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly" in order to calculate damages. *Stephenson v. El-Batrawi*, 524

F.3d 907, 915 (8th Cir. 2008). The Court proceeds to address each component of Plaintiffs' damages.

### A. Damages from Breach of CBAs and ERISA

The Plaintiffs and the Defendants have been bound by CBAs since at least May 15, 2017. As a result, the Defendants were required to fulfill a number of requirements, such as making monthly contributions to the Funds, accurately reporting contributions, and disclosing employment records. The Defendants' failure to provide the Funds' auditor with the requested documentation, and as such, the Funds are unable to calculate the sums owed by the Defendants. The Defendants have failed to fulfill their obligations under the CBAs and are therefore in default of the agreements.

The Plaintiffs seek to recover (1) all unpaid fringe benefit contributions discovered to be due pursuant to the audit of the period of January 1, 2020, through December 31, 2021, plus all additional amounts to which the Plaintiffs are entitled, including interest and liquidated damages; (2) liquidated damages or double interest charges on any amounts found to be due and owing under ERISA § 502(g), 29 U.S.C. § 1132(g); and (3) an award of costs, disbursements, and attorney's fees for the breach of contract and ERISA claim.

A hearing on the pending motion was held on February 15, 2024. [ECF No. 15]. Defendants did not appear at the hearing, despite being served with a copy of the pending motion. In light of these uncontested facts, the Court grants the Plaintiffs' request for default judgment as to the damages that resulted from the Defendants' violation of the CBAs.

### B. Attorney's Fees

The Lease Agreement provides that "in the event of any default . . . Lessee [] shall pay to Lessor, on demand, all costs, expenses and fees paid or payable in connection with the Claim, including, but not limited to, attorneys' fees and out-of-pocket costs, including travel and related expenses incurred by Lessor or its attorneys." The Plaintiffs seek attorneys' fees incurred in this action.

The Court will allow Plaintiffs 21 days to submit a request for fees with the necessary supporting information. That request must be mailed, along with this Order, to an appropriate address for service on the Defendants. The Defendants shall have 14 days thereafter to oppose the request. The Court will issue a final Order and enter judgment after the issue of fees has been resolved.

### C. Injunction

The Plaintiffs are seeking to enjoin the Defendants from further failure or refusal to produce records. The Court grants this request and will enter judgment once the record is supplemented as to the amount of damages due.

### Order

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Plaintiffs' Motion for Default Judgment and Injunction, [ECF No. 9], is **GRANTED**.

2. Default judgment will be entered in due course on behalf of the Plaintiffs, against Defendants G.F. Jedlicki, Inc., and Garrett Jedlicki for damages arising from

Defendants' breach of the CBAs, plus attorney's fees incurred in the course of this litigation.

3. Defendants are liable to Plaintiffs for delinquent contributions, interest, and liquidated damages due and owed.

4. Defendants are ORDERED to submit their contribution reports or payroll books and records to Plaintiffs for the period of January 1, 2020, through December 31, 2021.

5. Plaintiffs may file and serve a Motion for Entry of a Money Judgment in the amount Plaintiffs determines Defendants owe for delinquent contributions, liquidated damages, interest, reasonable attorneys fees and costs of collection. Defendants may then file and serve a response to Plaintiffs' Motion within 21 days of the date Plaintiffs' Motion is served.

6. The Court will examine the parties' submissions and issue an order for judgment as the Court deems appropriate. No hearing will be held unless the Court orders otherwise.

Date: April 16, 2024　　　　　　　　　　　*s/Katherine Menendez*
　　　　　　　　　　　　　　　　　　　　Katherine Menendez
　　　　　　　　　　　　　　　　　　　　United States District Court